# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### HARRISONBURG DIVISION

| | | |
|---|---|---|
| **HOWARD L. HERRING,** | ) | Case No. 5:10cv00025 |
| *Plaintiff,* | ) | **REPORT AND** |
| v. | ) | **RECOMMENDATION** |
| **MICHAEL J. ASTRUE,** | ) | By:  Hon. James G. Welsh |
| **Commissioner of Social Security,** | ) | U. S. Magistrate Judge |
| *Defendant,* | ) | |

The plaintiff, Howard L. Herring, brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of the Social Security Administration ("the agency") denying his claim for a period of disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C.§§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

The Commissioner's Answer was filed on July 2, 2010 along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered four days later, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Each party has separately moved for summary judgment and filed a supporting

memorandum. No request having been made for oral argument,[1] the following report and recommended disposition are submitted.

**I.  Summary**

At the time of the Commissioner's final decision the plaintiff was forty-seven years of age.[2] He attended school until he was sixteen years of age; however, the 8th grade was the last grade he successfully completed.[3] His past relevant vocational history included jobs as a sheet metal mechanic, cable layer, concrete form carpenter, and assembly line worker.[4] As outlined in the disability report and in his hearing testimony, the plaintiff's basic contention is that he became disabled due to a work-related injury to his neck and back with attendant pain and a bilateral upper extremity radiculopathy. (R.24-29,143.) A careful review of the administrative record, however, fails to support his claim that this condition meets the statutory definition of a disability.[5] It is therefore, recommended that the plaintiff's motion for reversal and/or remand

---

[1] WDVa Gen. R. 4(c)(2) direct that a plaintiff's request for oral argument in a Social Security case must be made in writing at the time his or her brief is filed.

[2] At this age the plaintiff is classified as a "*younger person*," and pursuant to the agency's regulations age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. §§ 404.1563(c) and 416.963(c).

[3] Pursuant to the agency's regulations a 7th grade through the 11th grade of formal education is considered to be a *limited education*, meaning an ability in reasoning, arithmetic and language skills, but not enough to allow an individual to do most of the complex job duties needed in semi-skilled or skilled jobs. 20 C.F.R. §§ 404.1564(b)(3) and 416.920(c).

[4] As described by the vocational witness, the assembly line job is classified as medium in exertional level and semi-skilled; concrete form carpentry is exertionally medium to heavy and semi-skilled; cable laying is exertionally medium and unskilled; and work as a sheet metal mechanic is exertionally medium to heavy and semi-skilled. (R.36-37.)

[5] A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

of the final administrative decision be denied, the Commissioner's motion for summary judgment be granted, and an appropriate final judgment be entered affirming the Commissioner's decision denying the plaintiff's DIB application.

## II. Standard of Review

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of DIB on or before the date of the Commissioner's final decision. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). This standard of review is more deferential than de novo. "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3d at 176 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (quoting *Craig v. Chater*, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). Additionally, the Commissioner's conclusions of law are not subject to the same deferential standard and are

subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3d 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

### III. Administrative History

The record shows that the plaintiff protectively filed his application on February 7, 2007 alleging a disability beginning March 1, 2006. (R.101-103,126,380.) His claim was denied both initially and on reconsideration, and an administrative hearing was held on December 4, 2008. (R.18-40,44-46,54-55,59-60.) At this hearing the plaintiff was present, testified, and was represented by counsel. (R.18-35,50,52,57-58.) Vocational testimony was provided by Earl Glosser, Ph.D. (R.34-39.)

Utilizing the agency's standard sequential evaluation process,[6] the plaintiff's claim was denied by written administrative decision dated January 29, 2009. (R.6-17.) Therein, the ALJ concluded that the plaintiff's degenerative cervical disc disease, his condition since undergoing C5/6 and C6/7 decompression and fusion, his failed cervical surgery syndrome and his cervical

---

[6] Determination of eligibility for social security benefits involves a five-step inquiry. *Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001). It begins with the question of whether, during the relevant time period, the individual engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, step-two of the inquiry is a determination, based upon the medical evidence, of whether the individual has a severe impairment that has lasted or is expected to last for 12 months. 20 C.F.R. § 404.1520(c); *Barnhart v. Walton*, 535 U.S. 212 (2002). If the claimed impairment is sufficiently severe, the third-step considers the question of whether the individual has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. 404.1520(d); 20 C.F.R. Part 404, subpart P, Appx.I. If so, the individual is disabled; if not, step-four is a consideration of whether the individual's impairment prevents him or her from returning to any past relevant work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the impairment prevents a return to past relevant work, the final inquiry requires consideration of whether the impairment precludes the individual from performing other work. 20 C.F.R. § 404.1520(f).

radiculopathy were *severe*[7] impairments; that these conditions, neither singularly nor in combination, met or equaled a listed impairment,[8] and that these conditions rendered the plaintiff unable to perform any of his past relevant work on a regular or sustained basis, but the plaintiff retained the functional ability to perform a range of light work [9] requiring only limited pushing, pulling or working above shoulder level, no overhead reaching, fine and gross manipulation or other repetitive upper extremity movement, and no significant cervical flexion or extension. (R.11-17.)

IV. Facts

As previously noted, the plaintiff's claim in this case results from his having sustained a work-related neck and left shoulder injury, when he fell over a peg on March 1, 2006. (R.288-294,417-418.) The following day he sought treatment through the emergency room at Rockingham Memorial Hospital. He was diagnosed to have sustained an acute cervical strain with no evidence of any lower extremity injury. (*Id.*) X-rays taken at the time demonstrated no

---

[7] Quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.'" *See also* 20 C.F.R. § 404.1520(c).

[8] The Listing of Impairments ("the listings") is in appendix 1 of subpart P of part 404 of 20 C.F.R. It describes for each of the major body systems impairments that the agency considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 1525.

[9] "*Light work*" is defined in 20 C.F.R. § 404.1567(b) to involve lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category generally requires a good deal of walking or standing, or when it involves sitting most of the time generally involve some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. A job may also be considered light work if it requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday" with intermittent sitting. Social Security Ruling ("SSR") 83-10.

5

acute injury and evidenced of only "mild" disc degeneration at C5/6; Percocet was prescribed as a pain reliever, and the plaintiff was excused from work for one day.

Although he returned to work "off and on" during the subsequent week, the plaintiff continued to experience neck and arm pain with an attendant numbness of the right thumb and index finger. (R.188-189,354-355.) An April 5, 2006 MRI revealed diffuse disc bulges at C5/6 and C6/7 and an attendant narrowing of the spinal canal. (R.302-303.) In May the same condition was re-demonstrated by a CT myogram, and evidence of "mild" bilateral carpal tunnel abnormality was separately demonstrated by EMG study. (R.195-196,197,286-287.)

Beginning in April the plaintiff's orthopaedist, Olumide Danisa, M.D., treated these conditions conservatively with an anti-inflammatory injection and a physical therapy referral. (R.232-256,386,415-416.) Despite this effort, the plaintiff continued to report acute pain and a worsening cervical radiculopathy, and in June Dr. Danisa recommended a two-level cervical decompression and fusion. (R.34-315,380-381,412-414.) The surgery was performed on July 14, 2006; the plaintiff "did well" with resolution of his arm and neck pain; his post-surgery hospital course was uneventful, and he was discharged on July 16, 2006. (R.194,265,268-271,382-384,400-401,411, 421.)

Following the surgery, Dr. Danisa's office notes reflect that the plaintiff did "relatively well;" by the end of August his strength was relatively normal; he was "having absolutely no pain," and work-hardening physical therapy was prescribed. (R.201-202.276-280,320-321,406,407-408,439.) When seen in September, the plaintiff reported that he had experienced a

6

"crack" in his neck and an attendant "bee sting" feeling down his left arm. (R.322,405,406.) On examination, Dr. Danisa found the plaintiff to exhibit "good strength," to have no loss of fixation, but to exhibit recurrent symptoms of pain.(*Id.*)

Follow-up EMG, nerve conduction, MRI and CT spinal studies demonstrated bilateral improvement in the plaintiff's pre-surgery carpal tunnel syndrome, some "mild" chronic denervation at C7, some narrowing of the spinal canal at C6/7, a "mild osteophyte impingement at C2/3 and a "moderate" impingement at C7/T1 due to a disc bulge. (R.189,190-193,358-359,397-399.) A later orthopaedic examination at University of Virginia Medical Center ("UVa") in January additionally demonstrated no failure or lessening of the surgical implants, normal alignment of the cervical spine on both flexion and extension, and normal vertebral height. (R.297-301.) It was the examiner's opinion that no further surgery would be appropriate. (R.297-298,440-441.)

When seen by Dr. Danisa in October 2006 the plaintiff was walking well, exhibiting "excellent" strength, showing no signs of any upper extremity neurological disorder and having only intermittent pain; however, given the various study results, Dr. Danisa reiterated his earlier opinion that it was unlikely the plaintiff would be able to return to the heavy physical labor he had previously done. (R.323,412.) He reconfirmed the same opinion in November, and in January 2007 he concluded that the plaintiff was physically able to work at a job requiring him to lift no more than twenty-five pounds. (R.324-326,373-376,402-404.) Consistent with the conclusion of the orthopaedist at UVa, Dr. Danisa also concluded that further surgery was not medically indicated. (R327,373,396.)

7

Approximately six month later, the plaintiff sought treatment from Darlinda Grice, M.D., at Augusta Pain Management Center. (R.439-442.) At that time the plaintiff reported experiencing ongoing neck, forearm, right hand and index finger pain. He reported that he remained on a work restriction, which limited him to lifting twenty-five pounds, and he reported that he was "100% independent with his activities of daily living." Based on her examination Dr. Grice concluded that the plaintiff had reached maximum medical improvement; she agreed with Dr. Danisa's weight lifting restriction; she advised the plaintiff to continue his activities "as set out by his surgeon," and she informed the plaintiff that her management of his pain in the future would be through medication and without any use of neuroaxial injections. (R.441.) Additionally, she opined that the plaintiff should not use his arms for repetitive activity, should not lift more than ten pounds regularly, should not do overhead work, and should not perform work requiring significant manual dexterity. (*Id*.)

Based on reviews of the plaintiff's treatment records and daily activities, in April and later in June 2007, state agency medical reviewers separately concluded that the plaintiff retained the residual functional ability to perform *light* work with certain functional limitations. (R.423-429, 445-451.) In the earlier of these functional assessments the reviewer concluded that the plaintiff retained a limited reaching ability and an ability to stoop and crouch occasionally. (R.425,428.) In the second and more restrictive of these two assessments, the reviewer noted limitations related to the plaintiff's retained ability to push or pull with the upper extremities occasionally, a limited ability to reach overhead, and a limited gross manipulative ability; in making this assessment the reviewer noted *inter alia* that it was consistent with Dr. Danisa's assessment. (R.447-448,451.)

V.   Analysis

As his principal argument on appeal, the plaintiff asserts that the ALJ's evaluation of his residual functional abilities improperly relied on opinions of Dr. Danisa (R.326) and Dr. Grice (R.439-441) that he could perform light-duty work, as contemplated in the workers' compensation context. It is his contention that such reliance was improper because the term "light-duty work" for workers' compensation purposes is not the same as term "light work" as defined by Social Security regulations.  There is, however, no need to examine any such definitional differences in the instant case, because the ALJ's decision was based in pertinent part on the vocational testimony of Dr. Glosser, which included his opinion that the plaintiff could perform jobs available in the regional and national economies despite physical limitations, which, in turn, were specifically indentified in Dr. Danisa's and Dr. Grice's separate assessments. (*See* R.15,36-39.)  Accordingly, the court is constrained to hold that the ALJ applied the correct legal standards and his residual functional capacity assessment is supported by substantial evidence in the record.

Arguing in the alternative the plaintiff next contends that the ALJ erred by failing to consider his possible entitlement to disability benefits for a closed period.  This claim of error by the plaintiff is also without merit. He concedes in his brief that the period between his industrial accident (March 1, 2006) and Dr. Danisa's release of him to return to work with restrictions on January 18, 2007 constitutes a period of less than twelve months.[10]  Nevertheless, it is his contention that his subsequent work activity between January and May 2007, when his physician

---

[10]A disability is defined in the agency's regulations to be the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

determined that he was again medically unable to work, constituted an unsuccessful work attempt within the meaning of 20 C.F.R. § 404.1574(c) and, therefore, should not serve as the basis for concluding that his condition did not exist for the minimum 12-month period. This argument, however, ignores the fact that the plaintiff's back condition improved following surgery to the degree that he was able to return to work in less than twelve months, and it ignores the fact that his condition was not so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater*, 62 F.3$^d$ 335, 338 (10$^{th}$Cir. 1995).

Referencing *inter alia* the reported results of the plaintiff's two-level cervical discectomy and fusion in July 2006, the various post-surgery medical imaging studies conducted between August and November 2006, the results of Dr. Visvalingam's neurological evaluation in October 2006, the results of an orthopaedic evaluation in January 2007, Dr. Danisa's post-surgery treatment notes and the treatment notes of Dr. Grice, in his written decision the ALJ outlined multiple bases for his finding that the plaintiff did not have an impairment or combination of impairments that significantly limited his functional capacity to perform basic work-related activities for twelve consecutive months. After then assessing the extent of the plaintiff's functional limitations and after considering the attendant vocational testimony to clarify their impact on the occupational base, the ALJ concluded that there were a significant number of jobs the plaintiff could perform, including parking attendant, cashier and usher. (R.16-17; ;*see also* R37-39.) These findings are well-supported by the record, and as a consequence the plaintiff's third contention on appeal also fails.

**VI.     Proposed Findings of Fact**

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. All facets of the Commissioner's final decision are supported by substantial evidence;

2. The ALJ's evaluation of the plaintiff's residual functional abilities was based on substantial evidence in the record;

3. The record fails to support the plaintiff's closed period of disability contention;

4. The plaintiff did not have an impairment or combination of impairments that significantly limited his functional capacity to perform basic work-related activities for twelve consecutive months;

5. `The ALJ appropriately assessed the extent of the plaintiff's functional limitations and appropriately considered the attendant vocational testimony to clarify their impact on the occupational base;

6. The plaintiff has not met his burden of proving his entitlement to a period of DIB; and

7. The final decision of the Commissioner should be affirmed.

**VII.    Recommended Disposition**

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING SUMMARY JUDGMENT to the defendant, DENYING plaintiff's claim, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

**VIII. Notice to the Parties**

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: this 21st day of March 2011.

*s/ James G. Welsh*
United States Magistrate Judge